UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STILLWATER DESIGNS & AUDIO, INC. d/b/a KICKER<br><br>Plaintiff,<br><br>v.<br><br>DISCOUNTS ONLINE, INC. d/b/a DISCOUNTSJUNGLE, and JOHN DOE<br><br>Defendants. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Stillwater Designs & Audio, Inc. d/b/a Kicker ("Kicker" or "Plaintiff") as and for its Complaint against Defendants Discounts Online, Inc. d/b/a DiscountsJungle and John Doe (collectively, "Defendants"), alleges upon personal knowledge as to its own acts and as to events taking place in its presence, and upon information and belief as to all other facts, as follows:

## NATURE OF THIS ACTION

1. This is an action for trademark infringement arising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, as well as related state law claims, arising from Defendants' improper sale of Kicker's products and use of trademarks owned and used by Kicker. Defendants' conduct has produced and, unless enjoined by this Court, will continue to produce a likelihood of consumer confusion and deception, to the irreparable injury of Kicker.

2. As a result of Defendants' actions, Kicker is suffering a loss of the enormous goodwill that Kicker has created in its trademarks and is losing profits from lost sales of

products. This action seeks permanent injunctive relief and damages for Defendants' infringement of Kicker's intellectual property rights.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this Complaint pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), as these claims arise under the Trademark Laws of the United States.

4. This Court has supplemental jurisdiction over the pendant state law claims pursuant to 28 U.S.C. § 1367(a).

5. Defendants are subject to personal jurisdiction in the Commonwealth of Massachusetts and this District pursuant to Mass. Gen. Laws ch. 223A § 3 because (a) Defendants have sold numerous products into the Commonwealth and this District; (b) Defendants have caused tortious injury to Kicker's trademarks within the Commonwealth and this District; (c) Defendants practice the unlawful conduct complained of herein, in part, within the Commonwealth and this District; (d) Defendants regularly conduct or solicit business within the Commonwealth and this District; (e) Defendants regularly and systematically direct electronic activity into the Commonwealth and this District with the manifest intent of engaging in business within the Commonwealth and this District, including the sale and/or offer for sale to Internet users within the Commonwealth and this District; and (f) Defendants enter into contracts with residents of the Commonwealth and this District through the sale of items on various online retail platforms and in Internet auctions.

6. Venue is proper in the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this District.

**PARTIES**

7.      Plaintiff Stillwater Designs & Audio, Inc. d/b/a Kicker is an Oklahoma corporation with its principal place of business at 5021 N. Perkins Road, Stillwater, Oklahoma 74075. Kicker designs, manufactures, and sells a variety of audio products, including speakers, amplifiers, and headphones. Kicker sells products through authorized distributors and dealers.

8.      Upon information and belief, Defendant Discounts Online, Inc. d/b/a DiscountsJungle ("Discounts Online") is a California corporation with its principal place of business at 2221 E. Olympic Boulevard, Los Angeles, California 90021. Discounts Online is a reseller of discounted products and accessories for car, home, or personal use. Discounts Online resells a variety of electronics equipment and other products through several online retail platforms including, but not limited to, Amazon.com, eBay.com, Walmart.com, and Rakuten.com. Discounts Online is an unauthorized reseller of Kicker products.

9.      The Doe Defendant is the individual that runs Defendant Discounts Online, Inc.'s online retail store seller accounts. The true name of the Doe Defendant is unknown to Kicker at this time. Kicker believes that information obtained in discovery will lead to the identification of the Doe Defendant. Kicker will amend this Complaint to include the name and residence of the Doe Defendant once it has ascertained the same. For purposes of this Complaint, all allegations and claims asserted against Defendant Discounts Online, Inc. include and are asserted against the Doe Defendant as well.

**FACTS**

A.  **Kicker's Trademark Usage**

10.     In October of 1987, the U.S. Patent and Trademark Office ("PTO") issued registration number 1,462,647 for use of the KICKER mark on "stereo speakers" (hereinafter, the "KICKER Mark"). Kicker is the sole and exclusive owner of the federally registered

KICKER Mark on the PTO's Principal Register. The KICKER Mark has been in continuous use since 1983. A true and correct copy of a printout from the Trademark Electronic Search System ("TESS") evidencing this registration is attached hereto as Exhibit 1. Said registration is in full force and effect, and the KICKER Mark is incontestable pursuant to 15 U.S.C. § 1065.

11.     Kicker owns several other federal trademark and service mark registrations, many of which utilize the KICKER Mark. True and correct copies of printouts from TESS evidencing these registrations are attached hereto as Exhibit 2. Said registrations are in full force and effect, and most of these marks are incontestable pursuant to 15 U.S.C. § 1065. The marks contained in Exhibit 1 and Exhibit 2 are referred to collectively as the "Kicker Marks."

| Mark | Reg. Date | Reg. No. | Goods/Services |
|---|---|---|---|
| KICKER | October 27, 1987 | 1,462,647 | Stereo Speakers. |
| VSS | February 9, 2016 | 4,899,198 | Audio amplifiers; Audio cables; Audio equipment for vehicles, namely, loud speakers for automotive audio systems; Audio equipment for vehicles, namely, speakers, amplifiers, equalizers, crossovers and speaker housings; Audio speaker enclosures; Audio speakers; Loudspeakers; Sound equalizers and crossovers; Stereo amplifiers; Subwoofers for vehicles; all of the foregoing for use with vehicles. |
| CUSH | February 2, 2016 | 4,894,112 | Headphones. |
| CushBlue | February 2, 2016 | 4,894,111 | Headphones. |
| TABOR | February 24, 2015 | 4,693,286 | Headphones. |
| AMPHITHEATER | May 21, 2013 | 4,338,422 | Audio speakers; Digital audio players; Electronic docking stations; Loud speakers. |

4

| | | | |
|---|---|---|---|
| SOUNDGATE | June 11, 2013 | 4,351,467 | Audio amplifiers; audio cables; audio equipment for vehicles, namely, loud speakers for automotive audio systems; audio equipment for vehicles, namely, stereos, speakers, amplifiers, equalizers, crossovers and speaker housings; audio equipment for vehicles, namely, subwoofers; audio speaker enclosures; audio speakers; loud speakers; signal processors; sound equalizers and crossovers; speaker enclosures; stereo amplifiers. |
| COMPRT | June 11, 2013 | 4,351,348 | Audio equipment for vehicles, namely, loud speakers for automotive audio systems; Audio equipment for vehicles, namely, subwoofers; Audio speaker enclosures; Audio speakers; Loud speakers; Speaker enclosures; Subwoofers. |
| COMPR | June 11, 2013 | 4,351,347 | Audio equipment for vehicles, namely, loud speakers for automotive audio systems; Audio equipment for vehicles, namely, subwoofers; Audio speaker enclosures; Audio speakers; Loud speakers; Speaker enclosures; Subwoofers. |
| COMPD | June 11, 2013 | 4,341,346 | Audio equipment for vehicles, namely, loud speakers for automotive audio systems; Audio equipment for vehicles, namely, subwoofers; Audio speakers; Loud speakers; Subwoofers. |
| COMPS | June 11, 2013 | 4,351,345 | Audio equipment for vehicles, namely, loud speakers for automotive audio systems; Audio equipment for vehicles, namely, subwoofers; Audio speaker enclosures; Audio speakers; Loud speakers; Speaker enclosures; Subwoofers. |
| ZKICK | June 7, 2011 | 3,975,935 | Speaker docks for MP3 players and handheld mobile digital electronic devices; remote controls for speaker docks; battery packs. |

| | | | |
|---|---|---|---|
| IKICK | June 7, 2011 | 3,975,934 | Speaker docks for MP3 players and handheld mobile digital electronic devices; remote controls for speaker docks; battery packs. |
| COMP | February 1, 2011 | 3,913,728 | Subwoofers. |
| [S logo] | April 26, 2005 | 2,943,913 | Loudspeakers and parts therefor. |
| LIVIN' LOUD | November 5, 2002 | 2,647,362 | Stereo speakers and parts thereof. |
| CORE | November 10, 2009 | 3,707,497 | Electronic interface for permitting charging, control, and audio/video connectivity for MP3 devices in automotive and home audio/video systems. |
| SOUNDGATE | August 5, 2008 | 3,479,125 | Electronic adapters for interfacing audio components, excluding film projectors. |
| SoloX | March 10, 2009 | 3,625,126 | Audio speakers. |
| COMP VR | October 24, 2000 | 2,397,143 | Automotive speakers and parts thereof. |
| SOLO-BARIC | December 7, 1999 | 2,298,155 | Stereo speakers and parts thereof. |
| [KICKER logo] | April 11, 1995 | 1,888,305 | Speakers. |
| [K logo] | July 25, 1995 | 1,907,120 | Stereo speakers. |
| STILLWATER DESIGNS | December 8, 1987 | 1,468,124 | Audio equipment, namely stereo speaker systems for home and car and parts thereof. |

12. Kicker advertises, distributes, and sells its products to consumers under the Kicker Marks.

13. Kicker has also acquired common law rights in the use of the Kicker Marks throughout the United States.

14. Kicker's federal trademark registrations were duly and legally issued, are valid and subsisting, and constitute *prima facie* evidence of Kicker's exclusive ownership of the Kicker Marks.

15. Kicker has invested many millions of dollars and has expended significant time and effort in advertising, promoting, and developing the Kicker Marks throughout the United States and the world.  As a result of such advertising and promotion, Kicker has established substantial goodwill and widespread recognition in its Kicker Marks, and those marks have become associated exclusively with Kicker and its products by both customers and potential customers, as well as the general public at large.

16. To create and maintain such goodwill among its customers, Kicker has taken substantial steps to ensure that products bearing its Kicker Marks are of the highest quality.  As a result, the Kicker Marks have become widely known and are recognized throughout the United States and the world as symbols of high quality products.

**B. Kicker's Authorized Dealer Network**

17. One of the most significant steps taken in this regard is Kicker's development of a nationwide network of authorized dealers ("Authorized Kicker Dealers" or "Authorized Dealer Network").

18. As a prerequisite to becoming part of the carefully selected Authorized Dealer Network, Kicker requires that its Authorized Kicker Dealers execute an agreement (the "Authorized Dealer Agreement"), which prohibits the transshipment, diversion, or transfer of any Kicker products to any other retail party.  Furthermore, as part of its normal business dealings with its Authorized Dealer Network, Kicker prohibits its Authorized Kicker Dealers from transshipping Kicker Products to other resellers.

19. Kicker's requirement that each of its Authorized Kicker Dealers agree not to transfer any Kicker Products to any other retail party is well known in the retail industry, particularly among retailers of audio products. Upon information and belief, Defendants were aware of this prohibition at all relevant times, and, at a minimum after Kicker provided Defendants with notice of the prohibition.

20. Only products purchased from an Authorized Kicker Dealer qualify for Kicker's extensive manufacturer's warranty (the "Kicker Manufacturer's Warranty") and are supported by the customer service of its Authorized Dealer Network.

C. **Defendants' Infringing and Improper Conduct**

21. Defendants are currently selling Kicker products on several online retail platforms, including, but not limited to, Amazon.com under seller name "DiscountsJungle," eBay.com under seller name "discountsjungle," Walmart.com under seller name "DiscountsJungle," and Rakuten.com under seller name "DiscountsJungle." Defendants sell a variety of audio products, including headphone, home theater, and automobile equipment.

22. To obtain the inventory of Kicker products Defendants are offering for sale on various online retail platforms, Defendants intentionally sought out, directly or indirectly, and obtained, Kicker products from one or more Authorized Kicker Dealers.

23. Further, based on knowledge in the industry and through demand letter communications sent by Kicker, Defendants were aware that each of those Authorized Kicker Dealers was prohibited from selling Kicker products to Defendants.

24. Defendants' continued advertisement, display, and sale of Kicker products has harmed, and continues to harm Kicker and its relationships with its Authorized Kicker Dealers.

25. Only products purchased from an Authorized Kicker Dealer qualify for the Kicker Manufacturer's Warranty. The Kicker Manufacturer's Warranty does not extend to Kicker products purchased from unauthorized dealers, such as Defendants.

26. Kicker has never authorized or otherwise granted Defendants permission to sell its products. Defendants are not an Authorized Kicker Dealer.

27. Defendants list Kicker products as "BRAND NEW!!!" with a "FULL WARRANTY!!!"



9





28. The Kicker Manufacturer's Warranty is only valid when Kicker products are purchased from an Authorized Kicker Dealer.

29. Because Defendants are not an Authorized Kicker Dealer and cannot sell Kicker products protected by the Kicker Manufacturer's Warranty, the products bearing the KICKER Mark offered and sold by Defendants are materially different than those sold by Kicker. The Kicker products sold by Defendants do not have the Kicker Manufacturer's Warranty.

**D. The Likelihood of Confusion and Injury Caused by Defendants' Actions**

30. Defendants' sale of Kicker products bearing the KICKER Mark with a different warranty than the Kicker Manufacturer's Warranty, or no warranty at all, is likely to cause confusion among consumers regarding Kicker's sponsorship or approval of those products.

31. Defendants' actions substantially harm consumers who purchase Defendants' products believing they are protected by the Kicker Manufacturer's Warranty. Defendants' actions cause consumers to not receive a warranted product as he or she intended.

32. Defendants' actions substantially harm Kicker's goodwill and reputation when consumers learn that the products they have purchased are not protected by the Kicker Manufacturer's Warranty.

33. The sale of Kicker products by unauthorized resellers interferes with Kicker's ability to control the quality of products bearing the Kicker Marks.

34. As a result of Defendants' actions, Kicker is suffering the loss of the enormous goodwill it created in the Kicker Marks.

35. Defendants continue to commit the acts complained of herein, and unless restrained and enjoined, will continue to do so, all to Kicker's irreparable harm.

## COUNT I
### (Trademark Infringement in Violation of 15 U.S.C. § 1114)

36. Kicker hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

37. This is a claim for federal trademark infringement under 15 U.S.C. § 1114 of the KICKER Mark.

38. The acts of Defendants alleged herein constitute the use in commerce, without the consent of Kicker, of a reproduction, counterfeit, copy, or colorable imitation of the Kicker Marks in connection with the sale, offering for sale, distribution, or advertising of goods, which use is likely to cause confusion or mistake, or to deceive consumers, and therefore infringe Kicker's rights in the KICKER Mark, all in violation of the Lanham Act.

39. Defendants have used, and continue to use, the KICKER Mark in the sale of Kicker products that do not qualify for the Kicker Manufacturer's Warranty. Therefore, the products sold by Defendants are materially different from those offered or sold by Kicker.

40. Defendants' infringing activities are likely to cause, are actually causing, and are willful and intended to cause, confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of such products, and constitute trademark infringement under 15 U.S.C. § 1114.

41. Defendants' use of the KICKER Mark in the advertisement or sale of materially different products demonstrates an intentional, willful, and malicious intent to trade on the goodwill associated with the KICKER Mark, thereby causing immediate, substantial, and irreparable injury to Kicker.

42. As a direct and proximate result of Defendants' actions, Kicker has been, and continues to be, damaged by Defendants' activities and conduct. Defendants have profited thereby, and, unless their conduct is enjoined, Kicker's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages. Accordingly, Kicker is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT II
**(Unfair Competition and False Designation of Origin in Violation of 15 U.S.C. § 1125(a))**

43. Kicker hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

44. This is a claim for federal trademark infringement under 15 U.S.C. § 1125(a) of the KICKER Mark.

45. Kicker engages in interstate activities designed to promote its goods and services sold, as well as the goodwill associated with the Kicker Marks, throughout the United States.

46. The Kicker Marks have been, and will continue to be, known throughout the United States as identifying and distinguishing Kicker's products and services.

47. By selling or distributing products using the KICKER Mark that are materially different from those sold by Kicker as alleged herein, Defendants are engaging in unfair competition, falsely designating the origin of their goods and services, and/or falsely representing sponsorship by, affiliation with, or connection to Kicker and their goods and services in violation of 15 U.S.C. § 1125(a).

48. By advertising or promoting products using the KICKER Mark that are materially different from those sold by Kicker as alleged herein, Defendants are misrepresenting the nature, characteristics, qualities, or geographic origin of their goods and services in violation of 15 U.S.C. § 1125(a).

49. Defendants' continued use of the KICKER Mark constitutes the use in interstate commerce of a word, term, name, symbol, or device, or any combination thereof, or false designation of origin, in connection with the sale, or offering for sale, of goods in violation of 15 U.S.C. § 1125(a)(1)(A).

50. Defendants have used, and continue to use, the KICKER Mark to sell products that are materially different from those sold by Kicker, thereby creating a false designation of origin in violation of 15 U.S.C. § 1125(a), and Defendants' activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and public deception in the marketplace, and injury to Kicker's goodwill and reputation as symbolized by the KICKER Mark, for which Kicker has no adequate remedy at law.

51. Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the KICKER Mark, thereby causing immediate, substantial, and irreparable injury to Kicker.

52. By selling and advertising products under the KICKER Mark that are materially different from those sold by Kicker, Defendants are using the KICKER Mark in connection with the sale, offering for sale, distribution, and/or advertising of goods and services to the public, without Kicker's consent.  Defendants are falsely designating the origin of their goods and services and/or falsely representing sponsorship by, affiliation with, or connection to, Kicker and their goods and services in violation of 15 U.S.C. 1125(a).  Accordingly, Kicker is entitled to a judgment of three times its damages and Defendants' ill-gotten profits, together with reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a).

53. As a direct and proximate result of Defendants' actions, Kicker has been, and continues to be, damaged by Defendants' activities and conduct.  Defendants have profited thereby, and unless their conduct is enjoined, Kicker's reputation and goodwill will continue to suffer irreparable injury that cannot adequately be calculated or compensated by money damages.  Accordingly, Kicker is entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

## COUNT III
### (Tortious Interference with Contract / Business Relations)

54. Kicker hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. At all relevant times, Kicker has had valid Authorized Dealer Agreements with its Authorized Dealer Network.

56. At all relevant times, Defendants had actual knowledge of Kicker's established contractual relationships with its Authorized Kicker Dealers, and were aware that Kicker's Authorized Dealer Agreement prohibits the transshipment, diversion, or transfer of any Kicker products to any other retail party, directly or indirectly, including, without limitation, Defendants.

57. Kicker has learned that Defendants have obtained significant inventories of Kicker products, directly or indirectly, from one or more Authorized Kicker Dealers, and have offered for sale and sold, and continues to offer for sale and sell such products through online retail spaces, including, but not limited to, Amazon.com and eBay.com, to customers throughout the United States including, but not limited to, within this District.

58. Defendants could not have acquired such large inventories of Kicker products without having intentionally induced, directly or indirectly, one or more Authorized Kicker Dealers to breach their Authorized Dealer Agreements with Kicker, and, in fact, Defendants did so.

59. Defendants have knowingly, maliciously, intentionally, and tortiously interfered with Kicker's contractual relationships and its advantageous business relations by, among other things, soliciting, encouraging, and inducing diverted sales of Kicker products. These actions have interfered with, impeded, and hindered Kicker's relationships with its Authorized Dealer Network, and have caused specific harm to Kicker's contractual/business relationships with the Authorized Kicker Dealers from whom Defendants improperly procured Kicker products, and with other Authorized Kicker Dealers with whom Kicker has contracted.

60. Defendants have no privilege or justification for their actions.

61. Defendants' activities, as alleged, constitute tortious interference with a contract/business relation under the laws of the Commonwealth of Massachusetts.

62. Defendants have refused to desist from these wrongful acts, and therefore Defendants have indicated that they intend to continue their unlawful conduct, unless restrained by this Court.

63. Defendants' actions have proximately caused Kicker loss.

64. Defendants' actions have irreparably harmed Kicker and its incalculable goodwill in the Kicker brand, and, unless enjoined, will continue to do so in a manner affording Kicker no adequate remedy at law.

## COUNT IV
### (Unfair Competition in Violation of M.G.L. c. 93A)

65. Kicker hereby realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66. Kicker and Defendants are in the conduct of trade or commerce within the meaning of M.G.L. c. 93A.

67. As detailed above, Defendants' continued interference and unauthorized sale of Kicker products constitutes an unfair and deceptive business practice.

68. Defendants' acts have irreparably harmed Kicker and, unless enjoined, will continue to do so in a manner affording Kicker no adequate remedy at law.

69. Defendants have refused to desist from these wrongful acts, and therefore Defendants have indicated that they intend to continue their unlawful conduct, unless restrained by this Court.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court:

1. Issue a permanent injunction preventing Defendants from using the KICKER Mark, prohibiting Defendants from buying, selling, or advertising products bearing the Kicker Marks, and requiring Defendants to discontinue their infringing practices described at length herein;

2. Award Kicker its damages suffered as a result of Defendants' acts and treble said damages as provided by law pursuant to 15 U.S.C. § 1117 and M.G.L. c. 93A;

3. Award Kicker its reasonable attorneys' fees in bringing this action as allowed by law;

4. Award Kicker pre-judgment and post-judgment interest in the maximum amount allowed under the law;

5. Award Kicker the costs incurred in bringing this action; and

6. Grant Kicker such other relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Kicker hereby requests a trial by jury on all causes of action so triable.

Respectfully submitted,
Plaintiff,
STILLWATER DESIGNS & AUDIO, INC.
d/b/a KICKER
by its attorney,

*/s/ Michael R. Murphy*
Michael R. Murphy (BBO#671816)
michael.r.murphy@klgates.com
Emily E. Gianetta (BBO#687585)
emily.gianetta@klgates.com
Jack S. Brodsky (BBO#696683)
jack.brodsky@klgates.com
K&L GATES LLP
State Street Financial Center
One Lincoln Street
Boston, Massachusetts 02111
T: +1.617.261.3100
F: +1.617.261.3175

Dated: August 18, 2017